UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | |
| | : | |
| v. | : | CRIM. NO. 3:04CR28 (JBA) |
| | : | |
| | : | |
| ANTHONY MEGALE | : | |

RULING ON NOTICE OF LOCAL RULE 57(d)(5)VIOLATION

I.   **Procedural History**

On September 15, 2004, a Superseding Indictment was
returned, charging the defendant with RICO conspiracy, Hobbs Act
extortion, and violations of 18 U.S.C. § 1955.  On October 15,
2004, the Court held a detention hearing for Anthony Megale, at
which the defendant was represented by three attorneys: Stephen
E. Seeger, Lindy R. Urso and Joseph R. Corozzo, Jr.[1]

On October 21, 2004, the United States filed notice of a
violation of Local Criminal Rule 57(d)(5).  [Doc. #88].  Rule
57(d) deals with extrajudicial statements made by counsel which

_____

[1] Attorney Joseph R. Corozzo, Jr. is not admitted to the
District of Connecticut bar.  His motion to be admitted pro hac
vice pursuant to D. Conn. L. Civ. R. 83.1(d)(1) was granted by
the clerk on October 12, 2004 [Doc. #72], and provisionally
granted by the Court on the record at the October 15, 2004
hearing. [Doc. #135 at 7].  Attorney Corozzo filed his appearance
on November 12, 2004. [Doc. #117].  Atty. Corozzo has not filed
any document(s) with the Court on behalf of the defendant since
October of 2004.  To date, however, his appearance has not been
withdrawn, and he still remains an attorney of record in this
case.

are prohibited after the commencement of criminal proceedings. D. Conn. L. R. 57(d).  Rule 57(d)(5) prohibits counsel from discussing the identity, testimony or credibility of prospective witnesses.  D. Conn. L. R. 57(d)(5).  Citing the Rules of Professional Conduct, the Government felt obligated to bring Attorney Corozzo's alleged violation of Rule 57(d)(5) to the attention of the court.[2]

On December 1, 2004, the district judge presiding over the case conducted a status conference.  During the conference, Attorney Corozzo's alleged violation of the local criminal rule was discussed, and the court ordered government counsel to submit a supplemental memorandum to address what an appropriate sanction would be in the event the court determined that a violation occurred.  On December 10, 2004, in its Supplemental Memorandum regarding Notice of a Violation of the Local Rules of Criminal Procedure, the Government reasserted that, "it is clear that Attorney Corozzo's extrajudicial statement ... revealing the identity of the government's cooperating witness constitutes a clear violation of the rule against identifying prospective witnesses in a pending case." [Doc. #149 at 1].  The Government

---

[2]  Local Civil Rule 83.2(a) incorporates "the Rules of Professional Conduct, as approved by the Judges of the Connecticut Superior Court as expressing the standards of professional conduct expected of lawyers practicing in the District of Connecticut."  D. Conn. L. Civ. R. 83.2(a).  Rule 8.3(a) of the Rules of Professional Conduct states, "[a] lawyer having knowledge that another lawyer has committed a violation ... that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate disciplinary authority."

left the question of an appropriate sanction to the Court.[3]  Id.;
3/16/05:6.[4]

Defendant's counsel filed a response on December 17, 2004.
[Doc. #150].  In their response, defense counsel denied that
Attorney Corozzo violated any local criminal rule.  Attorney
Corozzo alleges that, as the person identified was a victim as
well as a cooperating witness, Local Criminal Rule 57(e) provides
an exception to the prohibition against identifying witnesses.

Upon referral of the matter to the undersigned, a hearing
regarding sanctions was conducted on March 16, 2005.

## II.  Factual Background

The Superseding Indictment charges the defendant with
numerous acts of extortion.  More specifically, the defendant is
charged with extorting money each month from various businessmen
in exchange for "protection".  One of these businessmen began
cooperating with the government and recorded various
conversations between himself and the defendant.  After his
indictment on September 15, 2004, and arrest, the defendant was
presented and arraigned on September 29, 2004.  On October 15,

---

[3] Assistant United States Attorney Gustafson stated at oral
argument, "I still feel it's not the government's position to
argue for a specific remedy or sanction because the local rule is
silent.  Our concern was what had happened, and that it not
happ[en] again, and that certainly that if the Court were of the
mind that we are correct in asserting it shouldn't happen, that
we'd be satisfied with that recognition, and whatever the Court
felt appropriate." [3/16/05:6].

[4] This citation references the date of the transcript
followed by a semicolon and the page number.  The Court will
follow this citation format throughout the Ruling.

2004, the Magistrate Judge held a hearing regarding whether the defendant should be detained or released on bail.

### A.   October 15, 2004 Detention Hearing

In support of his motion for bail, the defendant, through counsel, filed a memorandum prior to the scheduled October 15, 2004 bail hearing.  Throughout this fourteen-page memorandum, the cooperating witnesses were not identified.  Instead, defense counsel either denominated the cooperating witnesses as "Business Man #1" and "Business Man #2" or struck out the names of the individuals identified.

During the detention hearing, government counsel argued first in support of detention.  In proffering his case, government counsel described the factual background of the conduct alleged and acts charged.  In laying out this factual background, the Assistant U.S. Attorney developed a chronological time-line of events and conversations between the defendant and the cooperating witness.  Throughout this chronology, the AUSA never revealed the names of any of the cooperating witnesses. Instead, the AUSA used terms such as "Businessman Number 1" or "cooperating witness" more than fifty-seven times.

Attorney Seeger was the first attorney to speak on behalf of the defendant.  In making an argument for the defendant's release on bail, Attorney Seeger spent considerable time detailing the relationship between the defendant and the cooperating witness. During his presentation, Attorney Seeger also referred to the

4

witnesses as "Businessman Number 1", "Businessman Number 2" or "cooperating witness".  Throughout his presentation, Attorney Seeger made approximately twenty-two references to the prospective witnesses and never once identified any individual by name.

Lastly, Attorney Corozzo spoke on behalf of the defendant. Despite the fact that no one had identified any cooperating witness by name, by the sixth sentence of his presentation, Attorney Corozzo had used both the first name and nickname of one cooperating witness.  Specifically, Attorney Corozzo stated:

> The alleged extortion victim is a family
> friend of Mr. Megale's for 30 years.  It's a
> fellow by the name of Harry, "Oilcan."
> Everyone knows who he is.  Mr. Megale knows
> who he is.  Mr. Megale is very aware of the
> circumstances.

[10/15/04:57].  Attorney Corozzo did not stop there.  Throughout his brief argument to the Court, Attorney Corozzo repeated the name or nickname of the cooperating witness approximately thirty-two times.

It is also undisputed that, following the hearing, Attorney Corozzo told several spectators in the courtroom, including one member of the press, that the government's cooperating witness in this matter was Harry "Oilcan" Farrington.  The next day, October 16, 2004, the Connecticut Post published an article reporting that Attorney Corozzo disclosed the government's cooperating witness' identity in open court. [Doc. #88, Ex. A].

5

**B.**   **March 16, 2005 Sanctions Hearing**

A hearing regarding Attorney Corozzo's conduct was held on
March 16, 2005. [Doc. #211].  Defendant's counsel, Attys.
Corozzo, Seeger and Urso, attended.  First, Attorney Corozzo
spoke on his own behalf, with additional argument offered by
Attorneys Seeger and Urso.  Defendant Megale was not present in
court by the agreement of the parties. [3/16/05:7-8].

At the hearing, Assistant United States Attorney Gustafson
stated that Attorney Seeger contacted him and indicated that
Attorney Corozzo intended to withdraw from the case.  Attorney
Corozzo did not make an oral motion to withdraw at the hearing,
and, to date, he has not filed a motion to withdraw.[5]  Attorney
Corozzo did state that, "based upon communications with the
government and co-counsel" he would "not be going further as Mr.
Megale's counsel in this case." [3/16/05:3].

During the hearing, the Court inquired whether there was
"any question or issue that Local Rule 57 is a court order that
counsel in a criminal matter is required to obey?" [3/16/05:9-
10].  All counsel acknowledged their obligation to follow Local

_____

[5]  At the hearing on March 16, 2005, the government stated
that Attorney Corozzo also had a potential conflict of interest.
This conflict stemmed from Attorney's Corozzo's participation,
and reported conflict, in a criminal case out of the Southern
District of New York.  The government asserted that the same
conflict issues were present in this case and stated that the
Court might need to address the issues in the future.  However,
the parties agreed that if Attorney Corozzo withdrew from the
case, the conflict of interest issue would be moot. [3/16/05:8-
9].  The government never filed a motion to disqualify and never
requested a Curcio hearing.

Rule 57.  Id. at 10.

The Court next asked Attorney Corozzo if he disclosed "the name and identity information, as reported in the Connecticut Post article that was appended to [the Government's] filing?" Id. at 10.  Attorney Corozzo responded yes.  Id.

He further stated, "I, today, do not believe I violated the order in identifying a cooperating witness. I was identifying the victim.  When it was done in open court, which is not an extrajudicial statement, it was for those purposes, to convince the Court of the relationship between the victim and the defendant."  [3/16/05:12].  He stated, "[a]ny extrajudicial statement to the press was not pursuant to a press conference, was not pursuant to an interview.  It was actually just a - really a request to clarify what was already said on the record as I [was] walking out of the courtroom ...."  Id.  He added that he "was under the mistaken impression that the last name did appear in the transcript, and it was just a request to clarify what I already had said on the record, and was more just acting courteously to the reporter, ... saving them the opportunity - the aggravation of going into the record."  Id. at 14.  "It was more of just a flippant remark, and an inadvertent answer in order to clarify what was already on the record."  Id.  "I believed [his name] to be on the record.  There was no intent to add something to the record, and it was really just a clarification ...."  Id. at 14-15.

The Government conceded that the audiotape played in court at the detention hearing had "identifying aspects."  "The cooperator's voice is on the tape, and to the extent that Mr. Megale had any question as to who cooperated against him, those questions would be dispelled very quickly."  Id. at 16-17. "Har," "Oilcan" and perhaps "Harry" can be heard on the tape. Id. at 17.  Attorney Corozzo conceded that the transcript of the October 15, 2004 detention hearing does not contain the last name of the cooperating witness.  [3/16/05:14].  Indeed, this Court's review of the transcript reveals that the only attorney who referred to the cooperating witness by any name was Attorney Corozzo.  [Doc. #135].  Both AUSA Gustafson and defendant's attorney Steven Seeger referred to this person as the "cooperating witness" and/or as "Businessman #1."  Id.

AUSA Gustafson added,

> I accept [Attorney Corozzo's] representation
> today that he was answering a reporter's
> question and was under the misapprehension
> that the last name was officially in the
> record, when it wasn't, so that the
> government's concern all along has been that
> this type of conduct, not just with respect
> to Mr. Corozzo in this particular instance,
> but in general, going forward here in the
> District of Connecticut, that it not be
> tolerated or sanctioned.
>
> Cooperating witnesses' identities are things
> that are very important to the government in
> its prosecutorial function, protecting the
> safety and the identity of these persons for
> as long as possible. Harm does come to -
> unfortunately, I know from personal
> experience, has come to people who are
> willing to cooperate with law enforcement and
> expose themselves to testimony in court, and
> putting other people to - exposing other

8

> people to lengthy jail terms.  So it's a
> concern that's paramount in the government's
> prosecutorial function.
>
> We do accept Mr. Corozzo's representation as
> to what transpired, what he thought he was
> doing and what was in the record, but also we
> were very careful not to have that man's last
> name in the record, and were disappointed to
> find it in the newspaper the next day.

[3/16/05:18-19].

## III.  **Discussion**

### A.  **Ethical Standards**

Local Rule 83.2(a)(2) provides that "[t]he ethical standards governing public statements by counsel in a criminal case are set forth in Local Criminal Rule 57."  D. Conn. L. Civ. R. 83.2(a)(2).[6]  Local Criminal Rule 57(d)(5) prohibits statements

---

[6] The Connecticut Rule of Professional Conduct 3.6(a), Trial Publicity, states that:

> A lawyer who is participating or has participated in
> the investigation or litigation of a matter shall not
> make an extrajudicial statement that a reasonable
> person would expect to be disseminated by means of
> public communication if the lawyer knows or reasonably
> should know that it will have a substantial likelihood
> of materially prejudicing an adjudicative proceeding in
> the matter.

The A.B.A. Standards for Criminal Justice, Standard 8-1.1, Extrajudicial Statements by Attorneys, states:

> (a) A lawyer should not make or authorize the
> making of an extrajudicial statement that a
> reasonable person would expect to be
> disseminated by means of public communication
> if the lawyer knows or reasonably should know
> that it will have a substantial likelihood of
> prejudicing a criminal proceeding.
>
> (b) Statements relating to the following

9

by counsel after the commencement of proceedings.  Rule 57(d)(5)

dictates that,

> A lawyer associated with the prosecution or
> defense of a criminal matter shall not, from
> the time of the filing of a complaint,
> information, or indictment, the issuance of
> an arrest warrant, or arrest until the
> commencement of the trial or disposition
> without trial, make or participate in making
> an extrajudicial statement that <u>a reasonable
> person would expect to be disseminated by
> means of public communication</u> that relates
> to:
>
> (5) The identity ... of a prospective
> witness.

D. Conn. L. Cr. R. 57(d)(5) (emphasis added).

### B.  <u>Attorney No-Comment Rules</u>

Free speech is without question one of the most treasured

rights afforded by the United States Constitution.  This right,

however, is not absolute.  The United States Supreme Court has

recognized different situations in which speech can be

regulated.[7]

---

> matters are ordinarily likely to have a
> substantial likelihood of prejudicing a
> criminal proceeding:
>
> (6) the identity, expected testimony,
> criminal record or credibility of prospective
> witnesses.

[7] A few examples include: 1) time, place, and manner
restrictions, <u>Grayned v. Rockford</u>, 408 U.S. 104, 115 (1972); 2)
obscenity, <u>National Endowment for the Arts v. Finley</u>, 524 U.S.
569, 577 (1998); defamation, <u>Gertz v. Welch</u>, 418 U.S. 323 (1974);
and, 4) in limited circumstances, commercial speech, <u>44 Liquor
Mart v. RI</u>, 517 U.S. 484 (1996).

One area which has generated voluminous case law is the intersection between the right to free speech as protected by the First Amendment and the right to a fair trial guaranteed by the Sixth Amendment to the United States Constitution.  Often conflicts arise as to when speech can be restricted in an effort to conduct a fair trial.  As a result, several bar organizations and disciplinary bodies have generated different rules which regulate an attorney's extrajudicial comments in an effort to protect the integrity of trials.  These rules are enforced by states, bar associations, and court orders.  Most state rules parallel the American Bar Association's ("ABA") model rules.

Rule 3.6 of the ABA Model Rules of Professional Conduct states, in part:

> (a)  A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

Model Rule 3.6.  Subsection (b) goes on to identify the types of statements which are not considered as materially prejudicing adjudicative proceedings.  This subsection does <u>not</u> include the identity of witnesses.  In fact, the comment to Rule 3.6 identifies subjects that are more likely than not to have a material prejudicial effect, including the identity of a witness. Model Rules of Professional Conduct R. 3.6 cmt. (2002).

11

Our Local Criminal Rule 57(d) is similar to the ABA Model
Rule, and goes one step further.  Rule 57(d)(5) explicitly
includes the disclosure of a witness' identity among prohibited
extrajudicial statements.

The United States Supreme Court addressed the
constitutionality of "no-comment" rules in the case of <u>Gentile v.
State Bar of Nevada</u>, 501 U.S. 1030 (1991).  In <u>Gentile</u>, the State
Bar of Nevada filed a complaint against defense attorney Gentile,
alleging that his comments at a press conference regarding the
theory of the case and the credibility of the prosecution's
witnesses, violated a local rule on trial publicity.  <u>Id.</u> at 1044
(Kennedy, J., dissenting).  The State Disciplinary Board found
that Gentile violated the local rule, and the Nevada Supreme
Court affirmed that decision.  <u>Gentile v. State Bar of Nevada</u>,
787 P.2d 386 (Nev. 1990), <u>rev'd</u>, 501 U.S. 1031 (1991).  The
United States Supreme Court granted certiorari to determine what
constitutional standard to apply to the regulation of an
attorney's speech.  The Court held that the "substantial
likelihood of material prejudice" standard was constitutional and
should be applied to rules which place limits on an attorney's
right to free speech.  <u>Gentile</u>, 501 U.S. at 1048-49 (although the
Nevada rule was constitutional, the Court found it void for
vagueness).

Therefore, limiting an attorney's right to name potential
witnesses is constitutional, as long as there is a "substantial

likelihood of materially prejudicing" the judicial process by
disseminating the information.

     **C.   The Need to Protect the Identity of Confidential
          Informants**

     Confidential informants serve a distinct and important role
in the criminal justice system.  Information provided by
confidential informants can be used to make arrests, locate
contraband, and discover illegal activity.  The flow of
information between informers and law enforcement can be
extremely beneficial and must be protected to preserve these
relationships.  The disclosure of the identity of a confidential
informant could be disastrous to the physical well-being of the
informant or those close to him, as well as detrimental to the
willingness of others to divulge information to law enforcement
officers.  Wigmore explained the basis for rules protecting the
identity of confidential informants as follows:

>           Whether an informer is motivated by good
>           citizenship, promise of leniency or prospect
>           of pecuniary reward, he will usually
>           condition his cooperation on an assurance of
>           anonymity - to protect himself and his family
>           from harm, to preclude adverse social
>           reactions and to avoid the risk of defamation
>           or malicious prosecution actions against him.
>           ... Revelation of the dual role played by
>           (informers) ... ends their usefulness to the
>           government and discourages others from
>           entering into a like relationship.

J. Wigmore, Evidence, Sec. 2374 (McNaughton Rev. 1961).

     The issue of protecting the confidentiality of informants
was taken up by the Supreme Court as early as 1938.  Scher v.

<u>United States</u>, 305 U.S. 251 (1938) (unless an informer's identity is essential in defending charges, public policy prohibits identifying a confidential informant).  The Supreme Court also summarized the basis for protecting the identity of an informant in the case of <u>Roviaro v. United States</u>, 353 U.S. 53 (1957). Specifically, the Court stated:

> [t]he purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.  The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

<u>Id.</u> at 59.  <u>See also</u> <u>McCray v. Illinois</u>, 386 U.S. 300, 307 (1967) ("[t]he informer is a vital part of society's defensive arsenal. The basic rule protecting his identity rests upon that belief."); <u>Snepp v. United States</u>, 444 U.S. 507, 512 (1980) (availability of confidential informants "depends upon [law enforcement's] ability to guarantee the security of information that might compromise them.").[8]

While no fixed rule applies in determining whether the identity of a confidential informant must be revealed, courts must balance the public interest in protecting the free flow of

---

[8] Congress also recognized the necessity of protecting the identity of confidential informants by exempting such information from public disclosure under the Freedom of Information Act laws. 5 U.S.C. § 553(b)(7)(D) (1988).  <u>See also</u> <u>United Technologies Corp. v. Nat'l Labor Relations Bd.</u>, 777 F.2d 90, 94 (2d Cir. 1985) (informant confidentiality is important "to encourage the cooperation with law enforcement agencies by enabling the agencies to keep their informants' identities confidential.").

information against the accused's right to adequately prepare a defense to the crimes charged. <u>Roviaro</u>, 353 U.S. at 60-61. The "informant's privilege" must give way when "the disclosure of an informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause." <u>Id.</u> A defendant is generally provided the identity of an informant "[w]here the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." <u>United States v. Esperanza</u>, 859 F.2d 1067, 1073 (2d Cir. 1988) (citing <u>United States v. Russotti</u>, 746 F.2d 945, 950 (2d Cir. 1984); <u>United States v. Roberts</u>, 388 F.2d 646, 648-49 (2d Cir. 1968)).

Here, the issue was not the defendant's right to learn the identity of a confidential informant. The informant was going to testify, and his identity would have been revealed to the defendant and his counsel, even if the defendant did not already know who he was. Instead, the question is whether defense counsel's public disclosure of the cooperating witness' name was proper, and specifically whether it was proper for him to publicly disclose the witness' name for dissemination through the media. Although one can attempt to define and distinguish a cooperating witness from a confidential informant, for our purposes, this is a distinction without a difference. Both cooperating witnesses and confidential informants have been defined as "confidential sources." <u>See United Technologies Corp.</u>

15

v. National Labor Relations Brd., 777 F.2d 90, 94 (2d Cir. 1985)
(in an employer-informant FOIA exemption case, a confidential
source was defined to include a witness "who is promised or
reasonably expects confidentiality unless and until the agency
needs to call him as a witness").

The government's disclosure of the identity of a cooperating
witness or identifying characteristics of a cooperating witness
to a defendant and his counsel does not automatically or
necessarily establish that the public identification of a
cooperating witness is appropriate or authorized, or that the
identification should be disseminated through the media.  In
addition to the implications of public disclosure for the
witness' safety, public disclosure exposes a prospective witness
to harassment and intimidation, thereby threatening the integrity
of subsequent judicial proceedings on the indictment, including
the trial.  It also undermines the public's faith in the ability
of the judicial system to maintain confidential information until
its disclosure is authorized by law.  Our local rules permit the
disclosure of information to counsel and parties subject to a
protective order which prohibits further dissemination of the
information, including dissemination to the public at large,
unless the Court gives permission.  In this case, because the
identity of the person who cooperated in the investigation was
known to the defendant and his lawyers, due to the relationship
between them which dated back many years, defense counsel was
able to circumvent any opportunity for the government to seek a

16

protective order by attempting to inject the informant's name into the public record at the defendant's first court appearance.

The Court has cast about in vain for any legitimate reason why the defendant's counsel would want the public to know the name of the cooperating witness at the earliest stage of this prosecution, the bail hearing.

In this case, government counsel went to great lengths to protect the identity of its cooperating witness from public disclosure. In the Superseding Indictment, the cooperating witness was referred to as "Businessman #1" and was not named. At the bail hearing, AUSA Gustafson, when presenting the factual background to the Court, continually referred to this individual as the "cooperating witness". Not once was the cooperating witness' name revealed.

Additionally, Attorney Seeger, one of defendant's counsel, repeatedly and appropriately referred to the "cooperating witness" or "Businessman #1" when arguing for bail. Not once, in approximately twenty-two references, did Attorney Seeger mention this individual's name or nickname. Furthermore, counsel for the defendant sought permission to redact from letters of support submitted to the Court on the question of bail the names of the letter writers. Defendant's counsel were concerned that these individuals would be subject to public harassment or other adverse consequences should their support for Mr. Megale become public.

17

Counsel for the defendant argued during the bail hearing, and afterwards, that it was important for the Court to understand the history between the cooperating witness and the defendant to properly assess whether the defendant posed a danger to the witness if released.  The Court does not find, nor does Attorney Corozzo explain why, the use of this individual's name was necessary to establish this relationship.  Attorney Corozzo could have simply stated to the Court that the defendant knew the identity of the cooperating witness and that a long relationship existed between the two.

Instead, counsel emphasized that the defendant had provided protection for the witness in the past and that the recorded conversations played by the government in court should be considered in that light.  Crediting that argument, it does not explain or justify Attorney Corozzo's repeated use in court of the first name or nickname of the cooperating witness, let alone his providing the last name of the cooperating witness to the press.  The only rationale offered by Attorney Corozzo, or on his behalf, was that the disclosure was permitted because the cooperating witness was also a "victim" and the Rule specifically permits disclosure of "the identity of the victim of a crime."  D. Conn. L. Crim. R. 57(e)(4).  He offered no explanation for why disclosing the identity of this "victim", either in court or to the press, advanced any interest the Local Rules were adopted to promote.

18

D.   **Protecting the Identity of Victims**

Historically, the identity of a victim was presumed to be public information and was commonly described as "community knowledge".  Sarah Henderson Hutt, In Praise of Public Access: Why the Government Should Disclose the Identities of the Alleged Crime Victims, 41 Duke L.J. 368, 378 (1991).  Victims had the responsibility of prosecuting their own cases.  Id.  As such, "victims relied on their neighbors to help them investigate crimes, detect the perpetrator, and apprehend him by raising a 'hue and cry'."  Id. at 379.  With the development of governmental investigative agencies, however, the role of victims in the criminal justice system faded.  As a result, the need to reveal the identity of the victim was also minimized.  This trend is evidenced in case law and statutes from both the federal and state courts.

Victims' rights vary in scope from state to state.  Some states afford victims the highest protection.  See N.Y. Civ. Rights Law § 50-b(1) (McKinney Supp. 1991) (protecting victim's right to keep identity confidential); Ariz. Rev. Stat. Ann § 13-4434 (victim's has the right to refuse to testify about name and address); Minn. Stat. Ann. § 611 A.035 (1991) (victim's address is confidential).  Other states extend protection only in limited circumstances.  See Ark. Code Ann. § 12-12-51 (Michie 1992) (protecting child and elder abuse victims only); Iowa Code  § 235 A.12 (1992) (victim privacy rights extend only to children); Ohio Rev. Code Ann. § 2907.11 (Baldwin 1989) (names of victims

19

suppressed until the preliminary hearing ...); Alaska Stat. § 12.61.140 (identity of sexual victim is never a public record); Conn. Gen. Stat. Ann. § 54-86e (West 1985) (victims of sexual assault are allowed confidentiality during court proceedings). Virtually every jurisdiction, including federal law, now provides protection to sexual assault victims and minor victims.  See 18 U.S.C. § 3509 (affording child victims special protection).

The right to protect the identity of sexual assault victims was addressed by the United States Supreme Court in the case of Florida Star v. B.J.F., 491 U.S. 524, 534 (1989).  The Court in Florida Star held that:

> if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need ... of the highest order.

Id. at 1525 (quoting Smith v. Daily Mail Publishing Co., 443 U.S. 97, 103 (1979).  However, the Court also stated, in dicta, that state governments could protect the identity of a rape victim:

> the government retains ample means of safeguarding significant interests upon which publication may impinge, including the rape victim's anonymity ....  The government may classify certain information, establish and enforce procedures ensuring its redacted release, and extend a damages remedy against the government or its officials where the government's mishandling of sensitive information leads to its dissemination.

Id. at 534.

In subsequent cases, courts have been explicit in protecting the privacy rights of rape victims.  Michigan v. Lucas, 500 U.S.

145 (1991) (rape victim's privacy interest was sufficient to
warrant excluding relevant evidence of victim's sexual history);
In Re A Minor, 205 Ill. App. 3d 480, 563 N.E.2d 1069 (94th Dist.
1990) aff'd, 595 N.E.2d 1052 (Ill. 1992) (upheld validity of
statute prohibiting the disclosure of minor victim of sexual and
physical abuse); Doe v. Board of Regents of the Univ. Sys. of
Ga., 215 Ga. App. 884, 452 S.E.2d 776 (1994) (sexual assault
victim's names are protected from publication); Bloch v. Ribar,
156 F.3d 673 (6th Cir. 1998) (sexual assault victim has a
fundamental right to restrict government officials from releasing
intimate details where no penological purpose is served).

These privacy rights have been extended by some states to
afford protection to victims whose physical safety is jeopardized
by threats of retaliation or who are placed in fear of harm as a
result of retaliation.  See Hutt, In Praise of Public Access,
supra, at n. 94 (quoting Cal. Gov't. Code § 6254(f) (West 1991)
(identifying information about a victim may not be released if it
would endanger a victim's safety); Ohio Rev. Code Ann.
§ 149.43(A)(2)(d) (Baldwin 1990) (exempting from freedom of
information requests '[i]nformation that would endanger the life
or physical safety of ... crime victim'); Wash. Rev. Code Ann.
§ 42.17.310(1)(e) (West 1991) (exempting disclosure of
complainant's identity if disclosure would endanger 'life,
physical safety, or property'); see also Hyde v. City of
Columbia, 637 S.W.2d 251, 263 (Mo. Ct. App. 1982), cert. denied,
459 U.S. 1226 (1983) ("[t]he name and address of a victim of

21

crime who can identify an assailant not yet in custody is not a public record under the Sunshine Law.")).

The specific mention of the identity of a victim as something that counsel is permitted to disclose publicly was added to this District's Local Criminal Rules in 1987.  There is no recorded commentary or history to explain its inclusion. However, it is likely that the rationale was a combination of recognizing that prosecutors must sometimes disclose the name of victims to perform their legitimate law enforcement functions; that defense lawyers sometimes have legitimate reasons to expose the identity of a defendant's accuser to mount a defense - for example, by finding out whether the accuser has made similar or false accusations in the past; and that the public has an interest in monitoring the performance of law enforcement agencies and prosecutors that will sometimes be enhanced by public disclosure of the victim's name or identifying information - for example, if the victim has a connection to public officials or some other position which might influence the handling of the investigation.

Attorney Corozzo contends that his disclosure was not improper since he is permitted by D. Conn. L. Crim. R. 57(e)(4), to reveal "the identity of the victim of a crime,"  and "[t]here can be no doubt the Government contends, in its litigation, that the person referred in their tapes as "Harry" is an **alleged victim** of extortion." [Doc. #150 at 3 (emphasis in original)]. In his papers, Corozzo argued that, "[t]he Government seems to

think that by simply labeling Harry a "cooperating witness," they can ignore the fact that <u>he is the primary **victim** in its Indictment</u>."  <u>Id.</u> (emphasis in original).

Corozzo explained at oral argument that, "in identifying the [cooperating witness], [there] was a specific point to convey to this Court that these people do know each other, and that there is absolutely no danger to this person, and that was the crux of the argument, not that Your Honor should detain Mr. Megale because he knows this-who this person is.  It was the opposite. Everyone knows who this person is.  Everyone knows he wore a wire.  We're submitting to you that even though he's portraying himself as a victim, he wasn't a victim, and that there's no harm to him ...."  [3/16/05:22].  Corozzo added, "Mr. Megale and [the confidential informant] go back 40 some-odd years.  They've been friends all their lives.  Mr. Megale is only trying to help him, and had, nor has, and continues to this day, has no intent to harm this person."  <u>Id.</u> at 23.

At oral argument, Attorney Corozzo persisted in his claim stating, "I, today, do not believe I violated the order in identifying a cooperating witness.  I was identifying the victim. When it was done in open court, which is not an extrajudicial statement, it was for those purposes, to convince the Court of the relationship between the victim and the defendant." [3/16/05:12].

There is nothing in the record which supports Attorney Corozzo's explanation that the name of the cooperating witness

was necessary to convince the court that a relationship between
the defendant and the cooperating witness existed.  Attorney
Corozzo could just as easily advised the court that the defense
knew the name of the cooperating witness/victim and that there
was a long-term relationship between the two.  In fact, this is
exactly what Attorney Corozzo's co-counsel did when describing
the relationship between the defendant and the cooperating
witness during his proffer for bail.  Whatever Attorney Corozzo's
motive for naming the cooperating witness, it certainly was not
to benefit the court or to further the defendant's argument for
bail.

Attorney Urso, arguing on behalf of Attorney Corozzo, also
pointed out the conflict between the two local criminal rules
and argued that identifying the confidential informant cannot
constitute a violation as there is nothing in the plain and
unambiguous text to preclude an attorney from announcing the
identity of a victim. [3/16/05:31].  Local Rule 57(d)(5)
prohibits extrajudicial statements that relate to the identity of
a prospective witness.  Local Rule 57(e)(4) does not preclude a
lawyer from disclosing, "[t]he identity of the victim of the
crime, if otherwise permitted by law."[9]  Attorney Urso also

_____

[9] Rule 57(e) is entitled "Statements Permitted After
Commencement of Proceedings.  The introductory clause, however,
states that "Rule 57(c) does not preclude a lawyer during such
period from announcing ..."  Rule 57(c) deals with statements
permitted during the investigatory stage.  Rule 57(d) deals with
prohibited statements after commencement of proceedings.  The
Court believes that reference to Rule 57(c) in Rule 57(e) is an
error and finds that the introductory sentence should refer to

24

argues that, "'otherwise permitted by law' refers to, ... rape shield statute, or maybe if a victim is a juvenile, things of that nature." <u>Id.</u> at 30.

E.   **<u>Identifying a Confidential Informant/Cooperating Witness Who is Also a Victim of a Crime</u>**

What then should attorneys do when two rules, read in conjunction with each other, provide conflicting information or procedure(s) to be followed?

1.   <u>Statutory Construction</u>

The principles of statutory construction which are relevant to the analysis of the Federal Rules are also to be applied to the rules of the court. <u>Julian v. Equifax Check Services, Inc.</u>, 178 F.R.D. 10, 14 (D. Conn. 1998). "[S]tatutes in pari materia (those that relate to the same subject) are to be construed together, if possible, to give effect to the purpose of each statute." <u>Id.</u> Accordingly, defense counsel maintains that to hold that Local Rule 57(d)(5) precludes any statements regarding the identity of witnesses would render Rule 57(e)(4) "superfluous, inoperative and meaningless." <u>Id.</u> at 31-32. Here, the defense asserts that the Government did not specifically request that the defense maintain the anonymity of the confidential informant as the defense had done in submitting letters in support of Mr. Megale's motion in support of pretrial supervised release. [3/16/05:28-29].

---

Rule 57(d).

Attorneys admitted to practice in this Court have a sworn obligation to have read, be familiar with, and faithfully adhere to the Rules of the Court, including D. Conn. L. Cr. R. 57(d)(5). See U.S. v. Cutler, 815 F. Supp. 599, 608 (E.D.N.Y. 1993).  They have an ethical obligation to adhere to the Connecticut Rules of Professional Conduct 3.6 and Chapter Eight of the A.B.A. Standards for Criminal Justice ("Extrajudicial Statements by Attorneys"), both of which impose a "substantial likelihood of material prejudice standard with respect to extrajudicial statements." Cutler, 815 F. Supp. at 608.  "Indeed as officers of the Court, 'attorneys have a fiduciary responsibility not to engage in public debate that will redound to the detriment of the accused or that will obstruct the fair administration of justice.'"  Id. (quoting Gentile at 1074).

"Given the professional obligations with which attorneys are expected to be familiar, it may well be that an order to comply with such obligations need not rise to the same level of specificity as an order directed at conduct that is not otherwise regulated." Cutler, 815 F. Supp. at 608-09.  In other words, it is incumbent upon an officer of the court to apply the rules in a reasonable manner in accordance with the facts of the case.  "A lawyer should not make or authorize the making of an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of prejudicing a criminal proceeding." A.B.A.

26

Standards for Criminal Justice, Std. 8-1.1 (emphasis added);
Connecticut Rules of Professional Conduct Rule 3.6(a) ("[a]
lawyer who is participating or has participated in the
investigation or litigation of a matter shall not make an
extrajudicial statement that a reasonable person would expect to
be disseminated by means of public communication if the lawyer
knows or reasonably should know that it will have a substantial
likelihood of materially prejudicing an adjudicative proceeding
in the matter.").

No experienced criminal lawyer would question the
proposition that publicly revealing the identity of a cooperating
witness could materially prejudice a criminal proceeding.  Such
revelation could lead to, among other things, the: 1) physical
injury or death of the cooperating witness; 2) the cooperating
witness' unwillingness to assist or testify in the prosecution,
including tampering with the witness' testimony; or 3) inability
to use a cooperating witness in on-going or future
investigations, all of which could directly affect the witness
but also implicate the court's truth-seeking and fact-finding
functions.

Despite the apparent prejudice, Attorney Corozzo maintains
that his actions in revealing the "victim's" identity are proper.
His position is totally inconsistent with any legitimate
rationale for permitting counsel to name victims publicly under
the rule.  Additionally, Attorney Corozzo used the victim's name

to argue that the cooperating witness was not a victim, but a long time associate of the defendant.

Attorney Corozzo failed to attempt to reconcile the prohibition against revealing a witness' identity and the right to reveal the victim's identity, using a literal reading of the rules, without applying any analysis or common sense, in an attempt to manufacture a conflict that he could cite in order to avoid the consequences of his rule violation.

Where they think that two rules conflict, attorneys cannot take it upon themselves to choose which rule to ignore and which rule to follow.  And the law of this Circuit contains specific examples of counsel in other organized crime cases who have been convicted of criminal contempt for failing to heed a court's admonition to follow the court's rules regarding pretrial publicity.

   2.   The Procedure to be Followed

The ABA Model Rules of Professional Conduct and the Connecticut Local Criminal Rules do not provide guidance for attorneys regarding the procedures to follow when two rules conflict.  The United States Court of Appeals for the Second Circuit, however, has provided guidance on the proper procedures to be followed by an attorney in a similar circumstance.  United States v. Cutler, 58 F.3d 825 (2d Cir. 1995).[10]  In Cutler,

---

[10] Attorney Corozzo, who specifically informed the Court of his involvement in defending another member of the Gotti family in a then-pending organized crime prosecution in New York, must have been familiar with the Cutler case, and the Court's

organized crime boss John Gotti was arrested and hired Attorney
Bruce Cutler to represent him.  Before the presentment, Attorney
Cutler attacked the prosecution and the credibility of the
witnesses in four major newspapers.  Id. at 828.  During the
detention hearing, the district court judge strongly advised
counsel to conform their conduct to Local Rule 7.[11]  Id. at 828-
29.  Unwilling to heed the court's advice, Attorney Cutler again
spoke to the press, "mocking" the government's witnesses.  Id. at
829.  The district court again ordered the parties to comply with
Rule 7 on two separate occasions, and the lawyer continued to
disregard the court's warnings.  Id. at 829-30.  As Attorney
Cutler was likely to be called as a witness, he was subsequently
disqualified as counsel.  Id. at 830.  After his
disqualification, Attorney Cutler appeared on a television show,
commenting on the case and the prosecution's witnesses.  Id. at
830-31.  At this time, the district court issued an order to show
cause why he should not be found in contempt.  Id.  After a five-

---

directions for attorneys facing a local rule with which they
disagree.  In fact, Attorney Cutler and Attorney Corozzo were co-
counsel in the case of United States v. Gotti, 98-CR-42 (BDP),
resulting in two reported opinions -- 1996 F. Supp. 321 (E.D.N.Y.
1998) and 9 F. Supp.2d 320 (E.D.N.Y. 1998).  They were also co-
counsel in the case of United States v. Gotti, 02-CR-606, cited
at 322 F. Supp.2d 230 (E.D.N.Y. 2004).  Even if they had not
worked together, Attorney Corozzo surely knew of the Court of
Appeals' review of Attorney Cutler's conduct, as he is admitted
to practice in the Eastern District of New York.

[11]  Local Rule 7 is substantially similar to the Connecticut
Local Criminal Rule 57, the rule at issue in this case.  Local
Rule 7 prohibited counsel from disclosing the identity, testimony
or credibility of prospective witnesses.  Rule 7 also made an
exception for the identification of victims.

day trial, Attorney Cutler was found guilty of criminal contempt.
Id. at 832.  On appeal, he challenged the constitutionality of
Rule 7 and the validity of the district court's orders mandating
conformity with the rule.  Id.

The Second Circuit ruled that "a party may not challenge a
district court's order by violating it."  Id.  Instead, the Court
held that proper procedure to be followed is:

> [the attorney] must move to vacate or modify
> the order, or seek relief in this Court.  If
> he fails to do either, ignores the order, and
> is held in contempt, he may not challenge the
> order unless it was transparently invalid or
> exceeded the district court's jurisdiction
> ...

Id. (citing Walker v. City of Birmingham, 388 U.S. 307, 317-21
(1967); United States v. Terry, 17 F.3d 575, 579 (2d Cir.), cert.
denied, 513 U.S. 946 (1994); Matter of Providence Journal Co.,
820 F.2d 1342, 1346-47 (1st Cir. 1986), modified, 820 F.2d 1354
(1st Cir. 1987), cert. dismissed, 485 U.S. 693 (1988)).

The Second Circuit went on to hold that if a defendant
believes that a court order is not appealable, there are other
alternative avenues available to challenge the order.  First, the
defendant can seek mandamus.  Cutler, 58 F.3d at 833 (citing
Weight Watchers v. Weight Watchers Int'l, Inc., 455 F.2d 770, 775
(2d Cir. 1972).  Second, the defendant can seek a declaratory
judgment striking down the rule on which the order is based.
Cutler, 58 F.3d at 833 (citing Bernard v. Gulf Oil Co., 619 F.2d
459 (5th Cir. 1980).  Third, an attorney can ask the district
court for clarification of the rule or request that the rule be

30

modified.   <u>Cutler</u>, 58 F.3d at 833.  Most notably the Second
Circuit stated:

> [i]f truly confounded by the requirements of
> Local Rule 7, he could have, at the very
> least, requested some clarification or
> guidance from the Court as to the acceptable
> parameters of extrajudicial speech.  But,
> although he certainly had ample opportunity
> to do so in his three conferences with [the
> district court judge, defendant never
> objected.

<u>Id.</u> (citing <u>United States v. Cutler</u>, 815 F. Supp. at 611.

Accordingly, where there is a facial conflict between two
rules, such as D. Conn. L. Cr. R. 57(d)(5) and R. (e)(4), counsel
should not take it upon himself or herself to decide which rule
trumps.  Counsel must either: 1) challenge the constitutionality
of the rule; 2) seek a writ of mandamus; 3) seek a declaratory
judgment nullifying the rule; or 4) request a clarification of
the rule or seek leave of court to modify the rule.

In the case of cooperating witnesses/confidential
informants, counsel must err on the side of protecting the
confidentiality of the witness, and should first protect the
identity of the witness.  In certain kinds of cases, revealing
the identity of cooperating witnesses/confidential informants
places the lives of these individuals in grave danger and has the
potential to forestall others from cooperating with law
enforcement.  The protection of cooperating witnesses and other
confidential sources of information is of significant public
concern.  And our system of justice is prejudiced and the
public's faith in our system of justice shaken when the safety of

31

witnesses is threatened or their prospective testimony is
tampered with.  It is not enough that an attorney believes that
the identity of the confidential witness is known or that he
believes, even reasonably, that no harm to the confidential
witness will result.  That argument can be presented to the court
in support of an application to make a public disclosure of the
witness' name, so that the need for the disclosure can be weighed
against the prospective harm in a forum in which all interested
parties can be heard, assuming that the reason for the proposed
disclosure is a legitimate one.  As officers of the Court with an
interest in protecting the integrity of judicial proceedings, it
behooves counsel to seek a reasoned determination based on all
available information, rather than chance a questionable
unilateral disclosure that results in a front page newspaper
article and harm to the witness whose name is disclosed.

    And to forestall any misunderstandings, the government's
counsel could explicitly indicate at the onset of any prosecution
in which the public identification of prospective witnesses is an
issue, that prospective witnesses should not be identified by
name in court. This notice would be particularly important when
out-of-state counsel appear and cannot be presumed familiar with
common understandings between the U.S. Attorney's Office and the
local defense bar.

## IV.  <u>Findings and Conclusion</u>

    On this record, the Court finds that Attorney Corozzo
violated Local Criminal Rule 57(d)(5).  He named a cooperating

witness to representatives of the media, knowing that the identification would be disseminated by the media.  Indeed it was, appearing prominently in the Connecticut Post, a local newspaper with statewide circulation.  Attorney Corozzo admitted this.  It is no excuse that Attorney Corozzo thought he was confirming information already on the public record to the reporter, since it was obviously the attorney's intent to inject the witness' name into the public record by using it (more than 30 times) at the hearing.  Attorney Corozzo's use of the cooperating witness' name during the Court proceeding was unjustified by any legitimate defense need and, based on his tone and expression, appeared to the Court to be done to engender publicity, harassment and intimidation the witness.  Counsel for the government represented that the witness has been relocated for his safety.  But the public disclosure of the identity of a cooperating witness in this, a case alleged to involve extortion and organized crime, at the outset of the prosecution, months in advance of any need for the witness to appear and testify, carried with it the "substantial likelihood of prejudicing a criminal proceeding" for which Rule 57 was prophylactically promulgated.  The types of foreseeable prejudice to the criminal proceeding included not only harm and intimidation to, or other tampering with, the specific witness named, but prospective tainting of the pool of potential jurors, discouraging other witnesses from coming forward, and undermining public confidence

in law enforcement's ability to keep confidential information confidential.

Although Attorney Corozzo indicated his willingness to withdraw from this matter, he is still listed as an attorney of record for the defendant.  A review of the docket, however, indicates that Attorney Corozzo has made no further filings with the Court on the defendant's behalf since October of 2004. Additionally, on October 4, 2005, the defendant pled guilty to the RICO conspiracy charge.  This mooted any basis for a government application to disqualify Attorney Corozzo.  The defendant is currently scheduled to be sentenced on April 3, 2006.

While the need to enforce Rule 57(d)(5) is not moot, the Court's determination of an appropriate sanction is affected by Attorney Corozzo's willingness to withdraw from the representation of Mr. Megale, and the fact that he was admitted pro hac vice in this matter.  To protect against any further violations of the Rule, it is ordered that Attorney Corozzo notify any court to whose bar he seeks admission or any judge before whom he seeks to appear, pro hac vice, that he has been found to have violated a District of Connecticut local rule protecting the identity of witnesses.  Should he appear in the District of Connecticut in the future, he will comply with Rule 57(d), unless relieved of compliance upon an application timely made.

If Attorney Corozzo, or any lawyer, faces a similar situation in the future, or needs clarification of any rules or orders of this District Court, he or she must follow the procedures outlined above.  Failure to do so will result in more serious sanctions.

This is not a recommended ruling.  Local Civil Rule 83.2(a) incorporates "the Rules of Professional Conduct, as approved by the Judges of the Connecticut Superior Court as expressing the standards of professional conduct expected of lawyers practicing in the District of Connecticut."  D. Conn. L. Civ. R. 83.2(a). "Nothing in the Rule 83.2 shall be interpreted to limit the inherent authority of the Judge to enforce the standards of professional conduct by way of appropriate proceedings other than by referral to the Grievance Committee. Id. at 82.3(c)(3).  This is a ruling and order on a pretrial matter which is reviewable pursuant to the "clearly erroneous or contrary to law" statutory standard of review.  28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.  D. Conn. L. Civ. R. 83.2(a).

35

SO ORDERED at Bridgeport this 30th day of March 2006.

```
              /s/
_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE
```